IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD CORMAN on his own behalf
and on behalf of all others similarly situated

                                                                                            29 U.S.C. § 216(b) Collective Action

    Plaintiff,

                                                                                            No. 15-cv-00913-JB-SMV

v.

JWS OF NEW MEXICO, INC. and
K.P. KAUFFMAN COMPANY, INC.

    Defendants.

_____

**PLAINTIFF'S REPLY TO DEFENDANTS RESPONSE TO PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Defendants argue that they should be permitted to avoid paying overtime wages to their blue-collar employees (who worked 80-100 hours *per week*) because Defendants sometimes deleted hours worked from their employees' paychecks. ECF No. 46. Defendants claim that they "decoupled" their employees' pay from hours worked by altering employee time records. *Id.* Defendants argue that they should thus be permitted to take advantage of the MWA's "commission" exemption. *Id.*

Defendants' argument is absurd. Should Defendants prevail, employers in New Mexico would be permitted to evade their obligation to pay overtime wages by simply altering their employees' time records, thus "decoupling" wages from hours worked, and thereby converting an hourly pay system into an exempt system. The New Mexico Minimum Wage Act permits no such chicanery.

1

Defendants also re-iterate their assertion that they pay their drivers 25% of the amount charged to Defendants' customers, including for hourly jobs, and that this accounting mechanism qualifies as a commission. But the fact that Defendants describe their hourly pay scheme as "a percentage of the charge to the customer" does not alter the fact that they paid their drivers a fixed hourly rate based on the actual hours each driver worked: Where a driver worked more hours, he was paid more—where he worked fewer hours worked, he was paid less. This is an hourly pay system.

In the final analysis, Defendants paid their truck driver employees more than fifty percent of their wages based on the number of hours each driver actually worked. The MWA does not exempt employees who are paid more than half their wages by the hour.

## RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

Plaintiffs dispute Defendants' additional "undisputed" facts A, B and D as follows:

A.  Defendants allege that: "The number of hours JWS billed to customers for hourly rate jobs frequently diverged from the number of hours drivers actually worked on such jobs because, at times, the number of hours recorded by the drivers was excessive, and therefore, JWS decreased the number of hours charged to customers on such jobs."

Plaintiffs' Response: It is patently untrue that "the number of hours recorded by the drivers was excessive." Defendants present no credible evidence to support this allegation. In fact, Plaintiffs recorded their hours accurately. Pl. Ex. 9, Affidavit of Richard Corman ("Corman Aff'd), at ¶¶ 3-4.

B. Defendants allege that they deleted hours worked from their employees' time records "when other drivers on the same job took less time to complete the job; when a driver reported hours that exceeded the hours other drivers had previously reported for

2

the same job; or when there were discrepancies between drivers' reported times and the times drivers had been dispatched to or from jobs by pushers."

<u>Plaintiff's Response</u>: Defendants' assertion is not credible. Defendants are aware that, due to on-the-ground variables, jobs take different amounts of time to complete on different days. Pl. Ex. 9, Corman Aff'd at ¶¶ 7-10 ("There are various reasons why a given job might take more or less time to complete on a different day. For example, you might be assigned to haul water away from a well where a different driver was assigned to do the same thing the day before. If, on your day, there was a long line at the disposal where you had to dispose of the water, you'd have to wait until it was your turn to unload your truck. This could take hours. If the guy who did the same job the day before didn't have to deal with the long line, he'd have done the job in fewer hours.

On cement jobs, we'd sometimes be put on standby because something was happening "down hole" in the well. When this happened, a cement job that took 3 hours one day could take 9 hours the next day.

On flowback jobs, sometimes the flow rate of produced water coming out of the well and into the frac tanks would slow way down. When this happened, it took hours longer to fill up your truck. So one day the flow might be fast and the job would be fast, and on other days the flow would be slow and the job would take longer.

JWS management knew that jobs sometimes took longer than other times for these reasons because they used to be drivers and they were out in the field with us.")

D. Defendants assert that: "JWS management's practice of writing down drivers' hours in this manner was not an infrequent occurrence on jobs charged to the customer on an hourly rate basis."

Plaintiff's Response: This statement is untrue. Defendants paid their drivers for the number of hours they recorded for the vast majority of their hourly jobs. Pl. Ex. 9, Corman Aff'd at ¶ 5.

## THE STANDARD ON SUMMARY JUDGMENT

Contrary to Defendants' description of the case, the Tenth Circuit held in *Lederman v. Frontier Fire Prot., Inc.* that, to prevail <u>on summary judgment</u>, employers must show that employees fall "plainly and unmistakably" within the statutory terms of the exemption. 685 F.3d 1151, 1157-58 (10th Cir. 2012). Only if Defendants survive summary judgment does the standard change. After summary judgment, Defendants must show by a preponderance of the disputed evidence (to the fact finder at trial) that it is entitled to the exemption. *Id.* at 1157

Here, on summary judgment, the Court will address a legal question on undisputed facts. In doing so, the Court must construe the Act narrowly against Defendants and Defendants must show that the drivers fall "plainly and unmistakably" within the exemption to prevail. *Id.* ("the phrase 'plainly and unmistakably' [is used] not in the context of an evidentiary standard, but in a discussion of whether undisputed facts were legally sufficient to make out an FLSA exemption."); *Welding v. Bios Corp.,* 353 F.3d 1214, 1218 (10th Cir.2004) ("Bios is not entitled to summary judgment unless it can establish that the undisputed facts... plainly and unmistakably fit within the companionship services exemption."); *accord Baker v. Barnard Constr. Co.,* 146 F.3d 1214, 1217–18 (10th Cir.1998); *Carpenter v. City & County of Denver,* 82 F.3d 353, 355 (10th Cir.1996), *vacated on other grounds,* 519 U.S. 1145, 117 S.Ct. 1078, 137 L.Ed.2d 213 (1997).

Only if Defendants survive summary judgment are they then are they entitled to attempt to carry their burden <u>at trial</u>, as to the disputed facts, by a preponderance of the evidence. *Lederman* 685 F.3d at 1158-1159. The *Lederman* case affirms the principle that Defendants must carry a heavy burden to survive summary judgment here. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012).

## **ARGUMENT**

### I. Defendants' Deletion of Employees' Hours Does Not Earn Them an Exemption from the MWA

Defendants cite no authority to support their assertion that an employer's deletion of some of their employees' hours worked somehow qualifies them for an exemption from the MWA. Nor do Defendants present any credible evidence showing that their drivers recorded their hours inaccurately.

The MWA requires that "every employer shall keep a true and accurate record of hours worked and wages paid to each employee." NMSA 1978 § 50-4-9(A). Employers who knowingly falsify their employees' time records commit willful violations of the Act. *Brock v. Nat'l Health Corp.*, 667 F. Supp. 557, 568 (M.D. Tenn. 1987) (employer "knowingly maintained inaccurate and falsified time records of hours worked by its employees…" Employer's "violations of the Act at issue were willful…"). When Defendants altered their drivers' time records, they not only failed to pay their employees for all hours worked, they also failed to keep true and accurate records of their employees' hours worked in contravention of the Act.

Despite Defendants' occasional unlawful refusal to pay their employees for all hours worked, the fact remains that Defendants paid their employees by the hour for the vast majority of their hourly job work. Plaintiffs' Exhibit 10 is a small sampling of the "tickets"

5

wherein Plaintiffs reported their actual hours worked and were paid for those hours. This sampling of tickets exemplifies Defendants' pay system under which Plaintiffs were paid by the hour. The MWA does not exempt employees who are paid, in part, on an hourly basis. *See,* section IV of Plaintiff's Memorandum In Support of His Cross Motion for Summary Judgment, ECF No. 41-1.

In the end, Defendants sometimes simply shorted Plaintiffs for hours worked. When this occurred, Plaintiffs protested.[1] Defendants' refusal to pay for all hours worked does not help them in their attempt to shoehorn their pay scheme into an MWA exemption. Rather, the practice goes to the scope of Plaintiffs' damages.

## II.   Defendants' Self-Serving Affidavit is Unavailing

Defendants base their argument -- that an employer's alteration of his employee's time record "decouples" the employee's pay from actual hours worked -- on a single self-serving affidavit from their general manager who testified to the contrary under oath.[2]

Defendants now would like to refute Defendant JWS's testimony. But a deposition is not a take-home exam. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242, n.5 (10th Cir. 2002). Defendants paid their employees by the hour for more than half of their work.

## III.   Plaintiffs Are Not Only Compensated Upon a Sale

Defendants argue that "Plaintiffs are only compensated upon a sale." Defendants' Response, ECF No. 46 at p. 6. This is not true. Defendants admit that "Plaintiffs received an hourly rate of $12.00 per hour for time spent on tasks like washing and

---

[1] Pl. Ex. 11, Deposition of Richard Corman ("Corman Dep.") at 31:13-25.
[2] Pl. Ex. 12, Deposition of Defendant JWS ("JWS Dep.") at 63:2-21.

6

maintaining their trucks, commonly referred to as 'yard time.'" *Id.* at p. 3, ¶ 15. Hourly pay for truck maintenance is not dependent on sales.

Furthermore, and contrary to Defendants' assertion, Plaintiffs do not admit that their hourly "yard time" pay was *de minimis*. See, ECF No. 46 at p. 8, fn. 3. Plaintiff testified that Defendants unlawfully "voided" half of his yard time hours.[3] Defendants' assertion that yard time only makes up a small percentage of Plaintiffs' pay is inaccurate and Plaintiffs were not only compensated upon a sale as is required of a bona fide commission system.

## IV. Plaintiffs Are Not Compensated on a Piecework Basis

By definition, compensation on a piecework basis is compensation for pieces produced. *See* section I of <u>Plaintiff's Memorandum In Support of His Cross Motion for Summary Judgment</u>, ECF No. 41-1 (collecting cases). Defendants' argument to the contrary strains credulity. Because this is not a piecework pay system, Defendants cannot identify what "piece" Plaintiffs here produced, nor can they describe how much Plaintiffs were compensated for each "piece" produced. This is so particularly with respect to the "hourly rate jobs" which made up more than half of Plaintiffs' work. For that work, the piece Plaintiffs were paid by was their time—which is fundamentally an hourly pay system, not a piecework system.

With regards to the "bid rate jobs," which made up less than half of Plaintiffs' work, Defendants conflate a piecework compensation system with a job rate system. <u>Defendants' Response</u>, ECF No. 46 at p. 21. (Plaintiffs "received 25% of the transportation charge to the customer for each driving job…"). In a job rate system, "the

---

[3] Pl. Ex. 11, Corman Dep. at 39:6-40:3.

employee is paid a flat sum for… doing a particular job, without regard to the number of hours worked in the day or at the job…" 29 C.F.R. § 778.112. Job rates systems are not exempt from the overtime requirements of the MWA. *Id.; Itzep v. Target Corp.,* No. SA-06-CA-568-XR, 2010 WL 2278349, at *13 (W.D. Tex. June 4, 2010)(employees paid on a job rate entitled to overtime pay).

> **V.     A "Flat Rate" System Must Decouple Hours Worked from Wages Paid to be Bona Fide**

Defendants argue that the cases and regulations cited by Plaintiffs do not require that "flat rate" compensation systems be decoupled from actual hours worked to be exempt. ECF No. 46 at pp. 5-6, 15-18. Defendants are wrong. In *Yi v. Sterling Collision Centers, Inc.,* Judge Posner decided that an auto-repair flat-rate pay system was a "commission" system and found that such systems, to be bona fide, must be "decoupled from actual time worked." 480 F.3d 505, 509. In *Klinedinst v. Swift Investments, Inc.,* the Eleventh Circuit found that an auto body flat rate pay system was exempt under the FLSA's "commission" exemption because: "Whether a technician took ten or thirty hours to complete a job, he would still be paid the same… The flat rate of pay was not the hours of time it actually took the worker to complete a job." 260 F.3d 1251, 1254-55.

The United States Department of Labor defined flat rate systems in accordance with Circuit Court authority: "A 'flat rate' hour is not an actual clock hour" and "each job is assigned a certain number of hours for which the customer is charged, regardless of the actual time it takes to perform the job." Wage and Hour Division of the Department of Labor's Field Operations Handbook, Section 21h04(d) (available at https://www.dol.gov/whd/FOH/FOH_Ch21.pdf).

Like commission systems, flat-rate systems must decouple actual hours worked from wages paid to qualify for the exemption. And, in any event, more than half of Plaintiffs' pay was hourly and cannot be attributed to a flat-rate system.

### VI. Application of the Exemption to Defendants Would Be Contrary to the Intent and Letter of the MWA

The MWA is a remedial statute which "must be liberally construed… and any exception will be strictly construed." *New Mexico Dep't of Labor v. A.C. Elec., Inc.,* 965 P.2d 363, 366 (N.M. Ct. App. 1998); *see also, Aaron v. City of Wichita,* 54 F.3d 652, 657 (10th Cir.1995)(exemptions to wage statues are to be narrowly construed.).

The New Mexico Legislature enacted the MWA to ensure that employers like Defendants do not permit their employees to work so many hours that they, in a state of exhaustion, pose a danger to themselves and the public on the roads. *See,* section I of Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment, ECF No. 47. The Legislature, in enacting the MWA, also aimed to encourage employers like Defendants to hire more employees (and contribute to a lowered unemployment rate) by putting a premium on over-working a smaller number of employees. *Id.* Exempting Defendants' blue-collar, truck driver employees, who work between 80 and 100 hours each week, from the MWA's overtime protections would run contrary to the Act's legislative purposes.

Furthermore, Defendants' attempt to wriggle out of the Act's coverage is without merit under applicable case law. In 2000, Defendants decided to stop paying their drivers overtime wages (a risky and unlawful choice that other New Mexico oil field service companies have refrained from making). But the exemption by which they seek justify their decision only applies to workers whose pay is decoupled from their hours

worked. *Yi,* 480 F.3d at 509; *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 284 (3d Cir. 2010); *Klinedinst,* 260 F.3d at 1254-55.

There is no dispute here that Defendants paid their employees based on the number of hours they actually worked for more than half of their pay. *See* Plaintiff's Undisputed Material Fact #14, ECF No. 41-1 at p. 6; Defendants' Undisputed Material Fact #15; ECF. No. 39 at p. 5; Pl. Ex. 12, JWS Dep. at 82:18 – 83:16. In addition to hourly jobs, Defendants paid their employees based on the number of hours they spent maintaining Defendants' trucks. Plaintiff's Undisputed Material Fact # 15; ECF No. 41-1 at p. 6, Defendants' Response to Plaintiff's Undisputed Material Fact #15; ECF No. 46 at p. 3. Defendants' pay system cannot be exempt because Defendants paid their employees more than 50% of their wages by the hour.[4]

### VII. The MWA Does Not Exempt Employees Who Are Paid on a Partially Exempt Basis.

The MWA does not exempt employees who are paid more than half of their wages on an hourly basis. The language of the statue is clear and unambiguous: Only those employees compensated on the listed bases are exempted. *Sims v. Sims*, 930 P.2d 153, 157 (N.M. 1996)(the plain meaning rule requires a court to "give effect to [the statute's] language and refrain from further statutory interpretation" when the language is clear and unambiguous).

Under Defendants' theory, a pay scheme that includes *any* exempt component, no matter how small, qualifies an employer for the exemption. ECF No. 46 at p. 14 (The MWA may be read to "permit the exclusion's application to workers who are *ever*

---

[4] Defendants have long admitted that their pay system is hourly. *See,* Pl. Ex. 13 (JWS Human Resources Director writes of Plaintiff Corman: "He works 40 to 60 hours per week **at the pay rate of $20 per hour.**")(emphasis added).

compensated upon a commission basis.")(emphasis added). As Defendants would have it, if an employee were compensated for just one hour per week on a commission basis, his whole workweek would be exempted and the worker could be paid $2 per hour for the remainder of his hours worked. The MWA cannot be read to accommodate this absurd result. *See*, ECF No. 41-1, section IV of Plaintiff's Memorandum in Support of his Cross Motion for Partial Summary Judgment ("The MWA Does Not Exempt Employees Who Are Paid on a Partially Exempt Basis.").

Had it intended to exempt employees paid on a partially non-exempt basis, to guard against the above absurd outcome, the New Mexico Legislature could have drawn language from FLSA section 207(i) which requires that more than 50% of an employees pay be on a commission basis to qualify for the exemption.[5] The New Mexico Legislature chose not to do so. *Reule Sun Corp.*, 226 P.3d 611, 615 ("We will not read into a statute language which is not there…"); *State ex rel. Citizens for Quality Educ. v. Gallagher*, 697 P.2d 935, 938 (N.M. 1985)("Had the Legislature so desired, it would have prohibited withdrawal of signatures placed on a petition for recall. This Court will not read into the Recall Act language which is not there."); *Hanson v. Turney*, 94 P.3d 1, 4 (N.M. Ct. App. 2004)("It is thus clear that if the Legislature intended to treat permit holders the same as owners of water rights, it knew how to draft a statute which would successfully do so."); *Brooks v. Hobbs Mun. Sch.*, 688 P.2d 25, 28 (N.M. Ct. App. 1984)("Had the legislature wished to put such language in… it could easily have done so. It did not.").

---

[5] 29 U.S.C. § 207(i) ("more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.").

This federal court should not conclude that the New Mexico Legislature intended to do something it chose not to do without certifying this dispositive state law question of first impression to the New Mexico Supreme Court. If however, this Court is to conclude that some mixed status commissioned workers should be exempt, then it should read the MWA in light of the FLSA and should incorporate FLSA's section 207(i) proportionality test.[6] Were the FLSA standard to apply, Plaintiff and the Class would not be exempt because more than half their wages were paid on an hourly basis.

In the end, protective legislation must be read to effectuate its remedial purpose. *New Mexico Dep't of Labor,* 965 P.2d at 366. There is no basis for an extra-textual expansion of the MWA's "piecework, flat rate schedules or commission" exemption to the truck drivers here.

Respectfully submitted,

*S/ Brandt Milstein*
595 Canyon Blvd.
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to counsel for all Defendants via e-mail message.

*S/ Brandt Milstein*

---

[6] *New Mexico Department of Labor,* 965 P.2d 363 (construing provisions of the MWA by looking to interpretations of similar provisions of the FLSA).